UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PATRICIA SCOTT FLEMING, as
Administratix of the Estate of Patrick Fleming,

                               Plaintiff,

-against-

THE CITY OF NEW YORK ET AL,

                               Defendants.
------------------------------------------------------------------X

**ORDER**

**18-CV-4866 (GBD) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

Plaintiff Patricia Scott Fleming brings this action, asserting violations of federal and state law, including *Monell* claims, against the City of New York (the "City") and several correctional officers (collectively, the "City Defendants") and the New York City Health and Hospitals Corporation and several medical providers (collectively, the "Medical Defendants"). Plaintiff alleges that her son, Patrick Fleming ("Patrick"), was subject to excessive force and medical malpractice during his pretrial detention at Rikers Island Correctional Center ("Rikers"). Dkt. No. 161. Plaintiff seeks to compel production of *Monell* discovery (Dkt. No. 233) (the "Motion"), which Defendants oppose. The City Defendants request that discovery, summary judgment, and trial be bifurcated as to Plaintiff's *Monell* claims. Dkt. No. 229. The Medical Defendants oppose the Motion as well due to the purported delay *Monell* discovery would cause. Dkt. No. 228. Plaintiff filed replies in support of the Motion (Dkt. Nos. 237, 245) and the City Defendants filed a sur-reply. Dkt. No. 257. For the

reasons discussed below, the Motion is granted in part and denied in part, and the City Defendants' request for bifurcation is denied.

## DISCUSSION

### I. Bifurcation

#### a. The Parties' Positions

The parties provide competing arguments as to whether discovery, summary judgment, and/or trial should be bifurcated due to Plaintiff's *Monell* claims. Plaintiff claims there is no basis for bifurcation because bifurcation would prejudice Plaintiff. "Plaintiff's credibility as to Patrick's individual claims is supported by many of the same documents that underpin her *Monell* claim." Dkt. No. 233 at 19. Municipal liability can attach to the City even if Plaintiff fails to establish individual defendant liability. Id. at 22. Speculation as to whether Plaintiff will be able to prove individual liability "should not disrupt the normal sequence of discovery." Id. at 23. Further, Plaintiff contends that any potential prejudice to Defendants can be addressed through case and trial management. Id. at 21, 24.

The Medical Defendants argue that while there are no *Monell* claims against them, allowing Plaintiff's "broad" *Monell* discovery to proceed "would unfairly impact [them] by complicating and delaying the proceedings." Dkt. No. 228 at 2. The Medical Defendants claim that Plaintiff would not be prejudiced by staying *Monell* discovery because Plaintiff would still be able to pursue her claims against the individual defendants. Id.

2

The City Defendants assert that bifurcation "will foster the interests of convenience and efficiency and will conserve the time and resources of the Court and the parties." Dkt. No. 229 at 6. "[P]laintiff must first establish that the individual defendants' actions amounted to a constitutional tort, and then must show that the alleged constitutional deprivation was caused by a municipal policy or custom." Id. at 7. "If a plaintiff does not succeed on a claim of an underlying violation of a right, he cannot pursue a claim against the City." Id. In addition, the City Defendants argue that proof to establish Plaintiff's *Monell* claim has no relevance to Plaintiff's underlying claims. Id. at 8. *Monell* discovery on "[Plaintiff's] terms" would "necessarily impose an overwhelming and disproportionate burden and expense on City resources, exponentially prolonging this litigation and dwarfing the discovery related to the underlying claims." Id. at 9. Yet, there are "various scenarios under which *Monell* liability would become superfluous after a trial of the individualized claims." Id. For instance, a jury may find no constitutional violation at all, or Plaintiff may receive a full recovery without needing to litigate her *Monell* claim. Id. at 10.

Moreover, the City Defendants argue that bifurcation would avoid unfair prejudice to them and avoid confusion of jurors who would have to "sift through distinct material facts and understand different standards of proof for each claim." Id. at 12. Plaintiff's "strategy . . . to utilize *Monell* evidence to buttress her individual claims . . . is calculated to prejudice the defendants by creating the impression that the individual defendants must have engaged in wrongdoing because of other,

3

unrelated events that allegedly took place at Rikers Island and an 'alleged culture of condoning and turning a blind eye to excessive force.'" Id. at 13.

### b. Analysis

There is competing caselaw regarding whether an action should be bifurcated due to *Monell* claims. On the one hand, some courts have bifurcated discovery until individual defendant liability has been established. See Morales v. Irizarry, No. 95-CV-5068 (AGS) (HBP), 1996 WL 609416, at *1 (S.D.N.Y. Oct. 22, 1996) ("[S]ince the proof required to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established."); Brown v. City of New York, No. 13-CV-6912 (TPG), 2016 WL 616396, at *2 (S.D.N.Y. Feb. 16, 2016) ("[S]ince there is no finding of *Monell* liability without first finding a constitutional violation, in an effort to promote convenience and economy, courts in this circuit have bifurcated *Monell* claims and stayed their discovery until a plaintiff has succeeded in establishing liability on the part of the individual defendants.").

On the other hand, courts in this District have held that *Monell* claims do not necessarily warrant bifurcation. "For municipal liability to attach, the jury need only find that Plaintiff was the 'victim of a federal tort committed by persons for whose conduct the municipality can be responsible.'" Small v. City of New York, No. 09-CV-1912 (RA), 2022 WL 1261739, at *12 (S.D.N.Y. Apr. 28, 2022) (citing Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013)). "The law does not require the jury to find

4

any of the named defendants liable. Rather municipal liability can exist 'even in the absence of individual liability' so long as 'the injuries complained of are not *solely* attributable to the actions of named individual defendants.'" Small, 2022 WL 1261739, at *12 (citations omitted) (emphasis in original). In Small, the Court held that its decision not to bifurcate the trial was not erroneous. Defendant's "liability was not 'derivative of the individual defendants' liability' because the injuries complained of were not solely attributable to the acts or omissions of the individual [d]efendants." Id.

The Court finds the reasoning in Small to be particularly convincing here, where the City's liability is similarly not based solely on the acts or omissions of the individually named defendants. Plaintiff asserts *Monell* claims against the City for "longstanding customs, policies, and practices of using and condoning or turning a blind eye to the use of excessive force against detainees on Rikers Island, ignoring and systematically failing to enforce DOC guidelines, including those relating to the use of force by correctional officers." Dkt. No. 161 ¶ 274. Therefore, the City may be subject to *Monell* liability even if Plaintiff cannot establish individual defendant liability, whether that be due to individual defendant qualified immunity, an untimely suit against the individual defendants, or because plaintiff settled with or abandoned the suit against individual defendants. Askins, 727 F.3d at 254.

In her Second Amended Complaint, Plaintiff alleges there was a June 8 Assault involving a claim of excessive force by defendant Williams as well as John Does 1-6. Dkt. No. 161 ¶ 65. Plaintiff alleges that John Does 11-14 failed to follow

5

DOC protocol to refer Patrick to Mental Health Services. Id. ¶¶ 118–19. The Second Amended Complaint alleges an October 20 Assault involving excessive force by John Does 21-26 as well. Id. ¶ 160. Therefore, the City's *Monell* liability does not turn solely on the conduct or liability of the individually named defendants but rather on others for whose conduct the City may be held responsible. Any concern regarding the relevance, proportionality, burden, and delay of Plaintiff's requested *Monell* discovery will be addressed by the Court through case and discovery management. Further, jury confusion can be avoided with appropriate instructions and jury charges. Schoolcraft v. City of New York, 133 F. Supp. 3d 563, 571 (S.D.N.Y. 2015). Therefore, bifurcation of discovery is unwarranted. Defendants may renew their request for bifurcation of summary judgment and/or trial at a later point. However, the Court notes it is unconvinced by the City Defendants' present arguments.

## II. Document Requests

The City Defendants object to Plaintiff's document requests based on N.Y. Crim. Proc. Law § 160.05, relevance, and burden. Dkt. No. 229.

### a. N.Y. Crim. Proc. Law § 160.50 Objections

The City Defendants object to document requests 2–8, 11, and 12, which seek production of material related to inmates other than Patrick and correctional officers, pursuant to N.Y. Crim. Proc. Law § 160.50. See Dkt. Nos. 229 at 20–21; 234-4. That statute provides, in pertinent part:

> 1. Upon the termination of a criminal action or proceeding against a person in favor of such person ..., the record of such action or proceeding shall be sealed.... Upon receipt of notification of such termination and sealing:

> (c) ... all official records and papers, including judgments and orders of a court but not including published court decisions or opinions or records and briefs on appeal, relating to the arrest or prosecution ... on file with the division of criminal justice services, any court, police agency, or prosecutor's office shall be sealed and not made available to any person or public or private agency.

N.Y. Crim. Proc. Law § 160.50. "The purpose of the provision is to ensure 'that one who is charged but not convicted of an offense suffers no stigma as a result of his having once been the object of an unsustained accusation.'" MacNamara v. City of New York, No. 04-CV-9612 (KMK) (JCF), 2006 WL 3298911, at *1 n.1 (S.D.N.Y. Nov. 13, 2006) (internal citations omitted).

"However, in cases presenting federal questions, such as here, discoverability, privileges, and confidentiality are governed by federal law, not state law. '[S]tate statutory privileges . . . must be construed narrowly, 'and must yield when outweighed by a federal interest in presenting relevant information to a trier of fact." In other words, state privilege rules should not be permitted to 'frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983.' Nonetheless, 'the policies underlying state evidentiary privileges must still be given serious consideration, even if they are not determinative.'" Crosby v. City of New York, 269 F.R.D. 267, 274 (S.D.N.Y. 2010) (internal citations omitted).

"'Federal courts commonly order production of documents sealed pursuant to Sections 160.50 . . ., particularly where the documents are 'cleansed of the names and other identifying information of the [non-party] arrestees . . . .' The worthy goals of Sections 160.50 . . . as well as a litigant's need for pertinent discovery can usually be

7

honored simultaneously by redaction of information that identifies, directly or indirectly, persons entitled to protection under these statutes." Id.

Here, Plaintiff contends that the City is liable for an unconstitutional policy or practice of "using and condoning or turning a blind eye to the use of excessive force against detainees on Rikers Island, ignoring and systematically failing to enforce DOC guidelines, including those relating to the use of force by correctional officers." Dkt. No. 161 ¶ 274. Plaintiff has a demonstrable need for information regarding the use of excessive force against detainees to acquire a fuller picture of the circumstances surrounding her current allegations. The City's privacy concerns on behalf of non-party inmates do not outweigh the relevance of and Plaintiff's need for the information requested during discovery considering the parties' Confidentiality Stipulation and Proposed Protective Order (Dkt. No. 187), which relieves such concerns. Accordingly, the City Defendants' objection to document production based on Section 160.50 is overruled.[1] An analysis of the City Defendants' additional objections to particular document requests follows.

### b. Inmate Folders of Detainees Other than Patrick Fleming

In Requests 2, 4, 8, and 12, Plaintiff seeks inmate folders of detainees other than Patrick. As the City Defendants note, inmate folders contain "background information relating to the criminal charges, court appearances, custody and classification documents, home addresses, dates of birth, social security numbers, next of kin, and other, similar information concerning each inmate, as well as other

---

[1] Additionally, it is not clear, and the Court is not aware of any caselaw stating, that records of detention constitute records of a criminal action or proceeding under N.Y. Crim. Proc. Law § 160.50.

8

information of a private and sensitive nature." Dkt. No. 229 at 20. The Court finds that Plaintiff is not entitled to the requested folders because the information contained therein is irrelevant to Plaintiff's claims. Therefore, Requests 2, 4, 8, and 12 are denied to the extent they seek inmate folders.

### c. Request 2

In Request 2, Plaintiff seeks "[t]he complete inmate folder, 24-Hour Reports, complaints, prisoner phone calls, audio and video files, and all items required to be provided under the UOF Package Accountability Sheet for" two specific inmates. Dkt. No. 234-2. Plaintiff learned about these specific inmates from the City Defendant's prior inadvertent document production. The City Defendants argue that Plaintiff is not entitled to the requested documents because the Court previously ruled that Plaintiff could not rely on inadvertently-produced documents or any information derived therefrom. Dkt. No. 229 at 21. However, the only reason why the documents were inadvertently produced is because the City Defendants objected to *Monell* discovery. Now that the Court finds that Plaintiff is entitled to *Monell* discovery at this stage, the City Defendants must produce the requested documents. Inmate 1's allegations are similar to Plaintiff's and are relevant to Plaintiff's excessive force *Monell* claim. To deny this request and then force Plaintiff to renew her request once the City Defendants have produced *Monell* discovery would be an inefficient use of time and waste of judicial resources. However, Plaintiff is not entitled to the requested documents as to Inmate 2. Inmate 2's allegations do not relate to Plaintiff's excessive force *Monell* claim but rather Plaintiff's deliberate indifference *Monell*

9

claim, which Judge Daniels previously rejected. See Dkt. No. 149 at 9. Therefore, the Court finds that Plaintiff is entitled to the requested documents, except for the inmate folder, for Inmate 1 but not Inmate 2.

### d. Requests 3, 5-8

Plaintiff seeks video footage and other documents relating to alleged use of force incidents involving other inmates on June 8, 2015, August 16, 2015, and October 19, 2016. Dkt. No. 234-2. The City Defendants argue that documents concerning use of force incidents involving other inmates are insufficient to support a policy claim merely because they took place on the same day as an alleged incident involving Patrick. Dkt. No. 229 at 22. Such argument is flawed given Judge Daniels' *Monell* ruling. When finding that Plaintiff had stated a *Monell* claim against the City for Fourth Amendment excessive force violations in her proposed second amended complaint, Judge Daniels held that "[w]hether other individuals contemporaneously suffered similar constitutional violations is central to finding that a municipal policy or custom existed under Monell." Dkt. No. 149 at 8. "Plaintiff's new allegations that at least six other inmates experienced similar abuses to those suffered by Fleming over a sixteen-month span are sufficient to establish the existence of a municipal policy or custom on a motion to dismiss." Id. at 8–9.

In addition, the Court is not persuaded by the City Defendants' argument that "[t]here is no evidence of a claim of excessive force by any of the inmates who were involved, and no evidence that any such claim was substantiated or that any officer was found to have committed any wrong." Dkt. No. 229 at 22. Such lack of evidence

is irrelevant to Plaintiff's *Monell* claim. Whether an incident will be relevant to Plaintiff's excessive force *Monell* claim does not depend on whether DOC identified a use of force incident as excessive but rather the facts underlying the incident. See Graham v. Connor, 490 U.S. 386, 396 (1989) (holding that to determining whether force used was reasonable under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. . . . [T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case . . . .") (internal citations and quotations omitted). Accordingly, Plaintiff is entitled to the documents in Requests 3 and 5-8, except for the inmate folders in Request 8.

### e. Request 11

Request 11 seeks documents related to certain officers' prior disciplinary records. The City Defendants argue that there are no infractions or misbehavior reports of officers; there are many types of employment-related proceedings, which may have no relation to claims of excessive force; and the request seeks documents related to officers who are not named in the Second Amended Complaint. Dkt. No. 229 at 23. Plaintiff is entitled to the documents in Request 11 only to the extent they reflect information related to discipline of the officers concerning false statements and/or use of force. Other information that may be in the records, such as employment-related proceedings, may have nothing to do with Plaintiff's claims.

Plaintiff may only seek such documents of individuals who are named defendants in the Second Amended Complaint.

### f. Request 12

Request 12(1) seeks certain documents and files for every inmate involved in a use of force incident at Rikers Island for the period from January 1, 2015 to June 30, 2017 for which video surveillance exists. The City Defendants claim that even limiting the request to incidents *for which video surveillance exists*, an estimated 60-70 incidents, is too burdensome and will take many months to locate, prepare for production, and produce. However, the City Defendants offer no compromise to make production less burdensome. Merely stating that it will take "many months" to produce the requested documents is insufficient to prevent production. The City Defendants do not state how many documents they would have to review or the number of locations or custodians they would have to search for documents. Accordingly, the City is ordered to produce the requested documents in Request 12(1). The City Defendants shall also produce the documents in Request 12(2) for the same reason Judge Daniels found that Plaintiff had asserted a *Monell* claim. See Dkt. No. 149 at 8 ("Whether other individuals contemporaneously suffered similar constitutional violations is central to finding that a municipal policy or custom existed under Monell.").

## III. Sanctions

Plaintiff requests that the Court order the City Defendants to pay her reasonable attorneys' fees incurred in bringing the Motion pursuant to Federal Rule

of Civil Procedure 37(a)(5)(A). Dkt. Nos. 233 at 25; 245 at 14–15. The City Defendants contend in their sur-reply that Rule 37(a)(5)(A) does not "require a mandatory award of expenses by the opposing party each time a motion to compel is granted." Dkt. No. 257 at 9.

However, where, as here, a motion to compel is granted in part and denied in part, Federal Rule of Civil Procedure 37(a)(5)(C) applies and the court has discretion to apportion fees. Given the Court's rulings above, each party should bear its respective costs and fees. See Robinson v. De Niro, No. 19-CV-9156 (LJL) (KHP), 2022 WL 704922, at *11 (S.D.N.Y. Mar. 9, 2022); Pugh-Ouza v. SpringHill Suites, No. 18-CV-1755 (RA) (DF), 2019 WL 3557794, at *15 (S.D.N.Y. Jul. 9, 2019). Accordingly, Plaintiff's request for fees is denied.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Motion, and denies the City Defendants' request for bifurcation. The Clerk of Court is respectfully directed to close docket entry 233.

SO ORDERED.

DATED: February 9, 2023
New York, New York

*Jennifer E. Willis*
JENNIFER E. WILLIS
United States Magistrate Judge